UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br>    v.<br><br>DIMITRI IVANOV, *et al*.,<br><br>                    Defendants. | CASE NO. C18-1161-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff IDS Property Casualty Insurance Company's ("IDS") motion for judgment on the pleadings (Dkt. No. 29) and request for judicial notice (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part both motions for the reasons explained herein.

**I.    BACKGROUND**

This action for declaratory relief seeks a determination of rights and obligations under three homeowner's insurance policies purchased by Defendants Dimitri and Anna Ivanov (the "Ivanovs") from IDS. (*See* Dkt. No. 15.)[1] The first homeowner's insurance policy covers the

---

[1] Generally, when "matters outside the pleadings are presented to and not excluded by the court, [a motion for judgment on the pleadings] must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

ORDER
C18-1161-JCC
PAGE - 1

Ivanovs' reported home address in Mukilteo, Washington, and has a personal liability limit of $300,000 for each occurrence or offense. (*Id*. at 3.) The second homeowner's insurance policy covers a condominium in Everett, Washington, and has a personal liability limit of $100,000 for each occurrence or offense. (*Id*. at 3–4.) The third homeowner's insurance policy covers a condominium in Lynnwood, Washington, and has a personal liability limit of $300,000 for each occurrence or offense. (*Id*. at 4.)

The policies contain identical language in the personal liability protection sections. (*See* Dkt. Nos. 30-1–30-3.) The policies obligate IDS to pay for "any one occurrence which any insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this policy." (Dkt. No. 15 at 5) (boldface omitted). The definition of "Insured person" includes the policyholder (in this case, the Ivanovs) and the Ivanovs' "relatives residing in [their] household." (*Id*.) "Bodily injury" is defined as "bodily harm . . . [and] includes required care, loss of services and death resulting from covered bodily harm . . . ." (*Id*.) "Occurrence" is defined as "an accident which is unexpected or unintended from [the policyholder's] standpoint resulting in bodily injury . . . It also includes repeated or continuous exposure to substantially the same general harmful conditions." (*Id*.) (boldface omitted). The policies exclude "[b]odily injury . . . expected or intended by one or more insured persons . . . ." (*Id*.) (boldface omitted). The policies applied "separately to each insured person against whom claim is made or suit is brought, subject to [IDS's] limits of liability for each occurrence." (Dkt. No. 29 at 10.)

Each of the policies list the Mukilteo residence as the Ivanovs' primary address. (*See* Dkt. Nos. 30-1 at 3, 30-2 at 3, 30-3 at 3.) In 2016, Anna Ivanov and her son Allen Ivanov were

---

F.2d 1542, 1550 (9th Cir. 1989). But documents either attached to the complaint or incorporated by reference are properly considered in ruling on a Rule 12(c) motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). All parties rely on the policies purchased by the Ivanovs, and IDS has incorporated by reference state court complaints filed by other parties to this action and reservation of rights letters sent by IDS to the Ivanovs. (*See generally* Dkt. Nos. 15, 24, 30-1–30-3.) The Court finds that these documents have been incorporated by reference and may be considered in ruling on IDS's Rule 12(c) motion.

primarily living at the Ivanovs' Mukilteo residence. (Dkt. No. 15 at 4.) Anna Ivanov stayed at the Mukilteo residence to take care of her elderly parents, and occasionally stayed at the Lynnwood residence. (Dkt. No. 24 at 12–13.) Dimitri Ivanov was living at the Everett residence. (*Id*. at 13.)

In July 2016, Allen Ivanov fatally shot three people and wounded a fourth at a party in Mukilteo, Washington with an AR-15 semi-automatic rifle. (Dkt. No. 15 at 6–7.) Allen Ivanov ultimately pled guilty to first-degree murder and stated that the deaths were premeditated and part of a common plan. (*Id*. at 8; Dkt. No. 24 at 5.) The estates of two of the deceased—Jacob Long and Anna Bui (collectively, "the estates")—sued the Ivanovs in Washington state court, alleging that the Ivanovs were negligent in failing to prevent the shooting. (*See* Dkt. Nos. 1 at 12–19; 16-1 at 6–12; 36-1.) The estates' complaints allege that Allen Ivanov purchased the rifle approximately a week before the shooting. (Dkt. Nos. 15 at 7, 16 at 5–6, 16-1 at 9.) The complaints further allege that the Ivanovs were aware of Allen Ivanov's history of mental health issues and the fact that he had purchased the gun but failed to take steps to protect others. (Dkt. Nos. 15 at 7–8, 16 at 8–9, 16-1 at 10–11.) The Ivanovs tendered the defense and indemnity to IDS, which has provided a defense under a reservation of rights. (Dkt. No. 15 at 9.)

IDS brought this action seeking a declaratory judgment that it does not have a duty to defend or to indemnify the Ivanovs because the shooting was not a covered loss under the policies. (Dkt. No. 1.) The Ivanovs filed an answer and counterclaimed for a declaratory judgment that: (1) coverage exists under the policies; (2) IDS owes them a duty to defend and indemnify in the state court actions and in all future actions arising out of the shooting; and (3) each shot Allen Ivanov fired was a separate occurrence for purposes of coverage under the policies. (Dkt. No. 9 at 13–14.) IDS has since filed an amended complaint that joins the estates as additional Defendants in this case, names "doe defendants," and recognizes, but disputes, the Ivanovs' contention that each shot constitutes a separate occurrence. (Dkt. No. 15 at 1, 9–10.) Defendants have each filed an answer to the amended complaint. (Dkt. Nos. 22, 24, 25, 26.) IDS moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt.

No. 29.)

**II.     DISCUSSION**

    **A.     Judicial Notice**

IDS requests that the Court take judicial notice of the following documents filed in Snohomish County Superior Court, as well as the facts contained therein: (1) the affidavit of probable cause against Allen Ivanov; (2) Allen Ivanov's guilty plea; (3) the Snohomish County Superior Court judge's amended report regarding the guilty plea; (4) the complaint of the estate of Jacob Long; and (5) the complaint of the estate of Anna Bui. (Dkt. Nos. 31, 31-1–31-5.)

The Court may take judicial notice of adjudicative facts, but only in the absence of a reasonable dispute about those facts. Fed. R. Evid. 201(a)–(b). Adjudicative facts concern the parties in an action, or their properties and businesses—the facts that a jury would review. *See* Fed. R. Evid. 201(a) advisory committee's notes to 1972 proposed rules. Facts are not subject to reasonable dispute if they are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court may take judicial notice of documents filed in Washington state court cases. *See Khazali v. Berns*, Case No. C16-1022-JLR, Dkt. No. 7 at 3 n.3 (W.D. Wash. 2016) (collecting cases). If the facts in such documents are disputed, "judicial notice is limited to recognizing that the documents exist, but not for the truth of the matters set forth therein, as those factual matters remain contested." *Brown v. Home Depot*, Case No. C14-0896-RSM, Dkt. No. 20 at 6 (W.D. Wash. 2015) (citing *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 984–85 (E.D. Cal. 2012)).

The documents IDS seeks judicial notice of are adjudicative in nature because they concern facts that a jury would review at trial. Further, the parties do not dispute the documents' existence. Therefore, the Court shall take judicial notice of the fact that the documents exist have been filed in the Snohomish County Superior Court. However, the affidavit of probable cause is

not sworn testimony and reflects the beliefs of the signing deputy prosecuting attorney, and thus the facts therein are not properly subject to judicial notice. (*See* Dkt. No. 31-1 at 2); *see United States v. Lopez-Solis*, 447 F.3d 1201, 1210–11 (9th Cir. 2006). Similarly, the factual allegations in the estates' state court complaints have not been tried and are being contested in state court by the Ivanovs. (*See* Dkt. Nos. 31-4, 31-5; *see also* Dkt. No. 32 at 4–5.) Therefore, the facts contained in the estates' complaints are not properly subject to judicial notice. *See* Fed. R. Evid. 201(b).

The Ivanovs contend that the facts contained in Allen Ivanov's guilty plea and the state court judge's amended report are subject to reasonable dispute, specifically regarding Allen Ivanov's intent. (*See* Dkt. Nos. 32 at 3–4; 39 at 9–10, 23–24.) Before accepting a guilty plea, the court must determine that the plea is voluntary and has a factual basis. Fed. R. Crim. P. 11(b); *see also* Wash. Rev. Code §§ 10.40.170, 10.40.180. A guilty plea "admits the facts constituting the elements of the [criminal] charge." *United States v. Cazares*, 121 F.3d 1241, 1246 (9th Cir. 1997); *see also United States v. Davis*, 452 F.2d 577, 578 (9th Cir. 1971) ("The effect [of a guilty plea] is the same as if appellant had been tried before a jury and had been found guilty on evidence covering all of the material facts."). The dispositive status of a guilty plea precludes a reasonable dispute of the facts contained in the plea, especially when those facts are integral to a subsequent proceeding. *See Green Valley Land & Cattle Co. v. Bailey*, 923 F.2d 861, 1–4 (9th Cir. 1991). Other circuits have upheld a district court's ability to take judicial notice of facts contained in a guilty plea when they are relevant to a subsequent proceeding. *See, e.g.*, *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (taking judicial notice of guilty pleas in appeal of arson insurance case because the motion seeking judicial notice "contain[ed] copies of the guilty pleas that clearly show that [appellees] pled guilty to arson . . . of the very property [at issue].")

In this case, Allen Ivanov's guilty plea is equivalent to a jury verdict on the underlying crimes for which he pled guilty. *See Davis*, 452 F.2d at 578. Allen Ivanov pled guilty to three

counts of aggravated first degree murder and two counts of attempted first degree murder. (*See* Dkt. No. 31-2.) In his guilty plea, Allen Ivanov stated that he went to the party intending to kill Bui, and fired the rifle at Bui, Long, the third decedent, and others with intent to kill. (*See id*. at 12–13.) These facts are relevant to issues presented by this case, including whether the policies' intentional act exclusions bar coverage for the Ivanovs. (*See generally* Dkt. No. 15.) The state court judge's amended report reiterates the facts contained in the guilty plea. (*See* Dkt. No. 31-3.) Thus, the Court shall take judicial notice of the facts contained in the guilty plea and the state court judge's amended report.

**B.    Legal Standards**

i.    *Judgment on the Pleadings*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). To prevail on a Rule 12(c) motion, the moving party must establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1368, at 690 (1969)). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, the Court examines whether the nonmoving party's pleading states a plausible claim for relief. *See Hansen v. Boeing Co.*, 903 F. Supp. 2d 1215, 1217 (W.D. Wash. 2012) (applying Rule 12(b)(6) plausibility standard to resolve a Rule 12(c) motion). In conducting this analysis, the Court must accept the nonmoving party's factual allegations as true and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

ii.    *Interpretation of Insurance Contracts*

In Washington, "[i]nterpretation of the terms of an insurance policy is a matter of law." *Allstate Ins. Co. v. Raynor*, 21 P.3d 707, 711 (Wash. 2001). "An insurance policy is construed as

a whole, with the policy being given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.,* 881 P.2d 201, 206–07 (Wash. 1994)). "The court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage." *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998). Undefined terms are given their "'plain, ordinary, and popular' meaning." *Id.* (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.,* 784 P.2d 507, 511 (Wash. 1990)). "If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists." *Am. Nat. Fire Ins. Co.*, 951 P.2d at 256. A term is ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* Any ambiguities must be construed in favor of the insured and against the insurer. *Id.*

**C.     Coverage Under the Policy**

      i.     *Occurrence*

The policies at issue obligate IDS to pay "all sums arising out of any one occurrence which any insured person becomes legally obligated to pay as damages because of bodily injury or property damage" that is covered by the policies. (Dkt. No. 15 at 5) (boldface omitted). An "occurrence" is defined as "an accident which is unexpected or unintended from [the Ivanovs'] standpoint resulting in bodily injury . . . ." (*Id.*) (boldface omitted). Thus, the policies define the term "accident" with reference to the subjective perspective of the Ivanovs.

In the context of insurance policy coverage, Washington courts have defined an "accident" as "an unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989) (citing *Tieton v. General Ins. Co. of Am.*, 380 P.2d 127, 130–31 (Wash. 1963)). "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen,

involuntary, unexpected and unusual." *Id.* (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 579 P.2d 1015, 1018 (Wash. Ct. App. 1978)); *accord Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 509 (Wash. 1992); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 751 P.2d 282, 286–87 (Wash. 1988). If the policy does not define "accident," the determination of whether an accident has occurred is an objective inquiry and looks to the "common sense definition" of the term. *See Roller v. Stonewall Ins. Co.*, 801 P.2d 207, 210 (Wash. 1990), *overruled on other grounds by Butzberger v. Foster*, 89 P.3d 689, 693 (Wash. 2004). But a policy may modify the definition of the term "accident," including incorporating the insured's subjective perspective into the determination of whether an accident has occurred. *See Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 464–65 (Wash. 2007). Similarly, a policy may refer to the insured's subjective perspective as to whether harms flowing from a covered occurrence were expected or intended. *See Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325–26 (Wash. 2002); *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 712 (Wash. 1994).

In their state court cases, the estates have alleged that the Ivanovs were negligent in failing to control Allen Ivanov's access to the rifle or otherwise take steps to prevent him from shooting Bui and Long. (*See* Dkt. Nos. 16 at 9–11, 16-1 at 11–12.) In this case, IDS seeks a declaratory judgment that it does not have a duty to defend or indemnify the Ivanovs against these claims because they do not involve a covered "occurrence" under the policies. (*See* Dkt. No. 15 at 9–11.) To be entitled to judgment on the pleadings in its favor, IDS must demonstrate that no material issue of fact remains to be resolved on whether the Ivanovs' alleged negligence was not an accident from their perspective. (*See* Dkt. No. 15 at 5); *Doleman*, 727 F.2d at 1482. IDS has not done so. First, IDS has not demonstrated that the Ivanovs acted deliberately in failing to prevent the shooting from occurring. *See Brosseau*, 776 P.2d at 125. In fact, the pleadings indicate that the Ivanovs attempted to prevent Allen Ivanov from harming himself or others but were unsuccessful. (See, e.g., Dkt. No. 16-1 at 10–11.) Thus, material issues of fact must still be resolved as to whether, from the Ivanovs' perspective, their alleged negligence

constituted a deliberate act that is excluded from coverage.

Second, even if IDS established that the Ivanovs' alleged negligence constituted a deliberate act, it has not demonstrated that the consequences of that alleged negligence were reasonably foreseeable from the Ivanovs' perspective. *See Brosseau*, 776 P.2d at 125. The estates' complaints and the pleadings in this matter allege that the Ivanovs were aware that Allen Ivanov suffered from mental illness and had a history of suicide threats. (*See* Dkt. Nos. 15 at 8, 16 at 8–9, 16-1 at 10–11.) IDS has not demonstrated that these alleged characteristics, combined with Allen Ivanov's purchase of the rifle, rendered his later shooting of Bui and Long reasonably foreseeable from the perspective of the Ivanovs. IDS acknowledges as much when it states that "the shootings were undoubtedly unexpected and unintended from the standpoint of" the Ivanovs. (Dkt. No. 29 at 15.) Thus, material issues of fact remain to be resolved on the question of whether Allen Ivanov's use of the rifle to shoot Bui and Long was a reasonably foreseeable consequence of the Ivanovs' alleged negligence. *See Doleman*, 727 F.2d at 1482; *Brosseau*, 776 P.2d at 125. Therefore, as material issues of fact remain to be resolved as to whether the Ivanovs' alleged negligence constituted a deliberate act that resulted in reasonably foreseeable consequences from their perspective, IDS's motion for judgment on the pleadings is DENIED on this ground.[2]

        ii.      *Insured Persons Under the Policies*

The parties dispute whether Allen Ivanov was a member of Anna Ivanov or Dimitri Ivanov's households during the events at issue in this case. (*See* Dkt. Nos. 29 at 19–22, 35 at 15–

---

[2] The estates argue that the Ivanovs' negligence was the efficient proximate cause of the bodily harm inflicted upon Long and Bui. (*See* Dkt. Nos. 35 at 7–8, 37 at 21.) "As a general rule, the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences to be drawn from those facts are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court." *Graham v. Pub. Employees Mut. Ins. Co.*, 656 P.2d 1077, 1081 (Wash. 1983). As factual issues remain in dispute, the Court declines to reach the issue of whether the Ivanovs' alleged negligence was an efficient proximate cause of the bodily injury inflicted upon Bui and Long.

17, 37 at 16–21, 39 at 20–24.) The policies each provide that, "You and your mean the Policyholder named in the declarations and spouse if living in the same household." (Dkt. No. 15 at 5) (boldface omitted). The policies' definition of "Insured person" included, "you . . . [and] your relatives residing in your household . . . ." (*Id.*) (boldface omitted).

In Washington, an inclusionary clause in an insurance contract is construed "liberally to provide coverage for those who can be embraced within the terms of the clause." *Pierce v. Aetna Cas. & Sur. Co.*, 627 P.2d 152, 154 (Wash. Ct. App. 1981). "[U]sually if doubt exists as to coverage, the language will be interpreted against the insurance company and in favor of coverage." *Gen. Motors Acceptance Corp. v. Grange Ins. Ass'n*, 684 P.2d 744, 746–47 (Wash. Ct. App. 1984). A number of Washington cases have examined the phrase "residents of the same household," and determined that it "has no fixed meaning but varies according to the circumstances of the case." *See Pierce*, 627 P.2d at 154; *see also Gen. Motors Acceptance Corp*, 684 P.2d at 746–47. (collecting cases). To determine who qualifies as a "resident of the same household," Washington courts look to several factors: (1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging." *Pierce*, 627 P.2d at 155; *see Nat'l Gen. Ins. Co. v. Sherouse*, 882 P.2d 1207, 1209 (Wash. Ct. App. 1994).

At the time of the 2016 shooting, Anna and Allen Ivanov were living at the Mukilteo residence. (*See* Dkt. Nos. 15 at 4; 24 at 3, 12.) The record does not indicate that Allen Ivanov intended to move away from the Mukilteo residence. Although Anna Ivanov intended to permanently move to the Lynnwood residence at an unspecified future date, this is insufficient to negate the fact that she was primarily residing at the Mukilteo residence at the time of the shooting. (Dkt. No. 24 at 12–13); *see Gen. Motors Acceptance Corp.*, 684 P.2d at 746. And Allen and Anna Ivanov shared a strong relationship as members of the household, as Allen is Anna's son. (*See* Dkt. Nos. 15 at 2; 29 at 2); *Pierce*, 627 P.2d at 155. Construed liberally, Anna

and Allen Ivanov were residing in the same household at the time of the shooting in 2016. *Pierce*, 627 P.2d at 154. Therefore, Allen Ivanov was an insured person under the Mukilteo policy because he was a relative of a policyholder (his mother) and resided in her household. (*See* Dkt. No. 15 at 5.) As there is no material issue of fact remaining to be resolved on this issue, IDS's motion for judgment on the pleadings is GRANTED on this ground. *See Doleman*, 727 F.2d at 1482.

IDS summarily asserts that because Allen Ivanov was an insured person under the policy covering the Mukilteo residence, he must also be an insured person under the policies covering the Everett and Lynnwood residences. (*See* Dkt. Nos. 29 at 20–22, 41 at 7–8.) IDS does not cite case law or language in the policies establishing that a person's status as an insured under one policy automatically makes that person an insured under other policies. (*See id.*) Rather, IDS must establish that Allen Ivanov was an insured person under the Lynnwood or Everett policies by showing that he was a relative of a policyholder and residing in that policyholder's household. (*See* Dkt. Nos. 15 at 5, 30-2, 30-3.) As discussed above, at the time of the shooting Anna and Allen Ivanov resided at the Mukilteo residence. (*See* Dkt. Nos. 15 at 4; 24 at 3, 12.) Dimitri Ivanov was living at the Everett residence, and none of the Ivanovs resided at the Lynnwood residence. (*See* Dkt. Nos. 15 at 4, 24 at 3, 12–13.) Notably, Washington cases analyzing whether individuals are residents of the same household focus on whether those individuals share the same dwelling, as opposed to belonging to the same family unit or being covered under similar policies covering different dwellings but issued by one insurance company. *See, e.g.*, *Pierce*, 627 P.2d at 154–57; *Hawaiian Ins. & Guar. Co.*, 534 P.2d at 54–56; *Nat'l Gen. Ins. Co.*, 882 P.2d at 1209–10. Thus, material issues of fact remain regarding Allen Ivanov's status as an insured person under the Lynnwood and Everett policies. Therefore, IDS's motion for judgment on the pleadings is DENIED on this ground. *See Doleman*, 727 F.2d at 1482.

   iii. *Intentional Act Exclusion*

IDS contends that the policies' intentional act exclusionary clause bars coverage for the

Ivanovs. (Dkt. No. 29 at 19.) The policies exclude "[b]odily injury . . . expected or intended by one or more insured persons . . . ." (Dkt. No. 15 at 5) (boldface omitted). "[E]xclusionary clauses are to be most strictly construed against the insurer." *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983). "The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance." *Id*. The purpose of an insurance contract is to provide insurance, and thus exclusionary clauses should not be read in a way that makes the contract inoperative. *Id*.

As discussed above, there is no unresolved material issue of fact as to whether Allen Ivanov was an insured under the Mukilteo policy. *See supra* Section II.C.ii. Also as discussed above, Allen Ivanov's guilty plea conclusively establishes that he intended to cause the bodily harm at issue: he pled guilty to multiple counts of first degree murder and stated that he shot the rifle at both Bui and Long with the intent to kill. *See supra* section II.A.; (Dkt. No. 31-2 at 2–4, 12–13). As such, the bodily injury at issue in this case was intended by Allen Ivanov, an insured person under the policy covering the Mukilteo residence, and that policy's exclusionary clause bars coverage for the Ivanovs. (*See* Dkt. No. 15 at 5.)[3] As there is no material issue of fact remaining to be resolved, IDS's motion for judgment on the pleadings is GRANTED on this ground. *See Doleman*, 727 F.2d at 1482.

The estates' negligence claims against the Ivanovs are predicated on the Ivanovs' alleged failure to prevent the bodily injury Allen Ivanov inflicted upon Bui and Long. (*See* Dkt. Nos. 16 at 5–6, 9–11; 16-1 at 8–12.) Washington courts have held that claims of negligence that are based upon an excluded event are also subject to exclusion. *See McAllister v. Agora Syndicate, Inc.*, 11 P.3d 859, 860–61 (Wash. Ct. App. 2000) (affirming dismissal of negligence claim that was "based on" act of assault and battery excluded under the policy's definition of

---

[3] Although Dimitri Ivanov was not living with Anna and Allen Ivanov at the Mukilteo residence at the time of the shooting, his status as a policyholder under the policy bars him from coverage as well. *See Mut. of Enumclaw Ins. Co. v. Cross*, 10 P.3d 440, 444–45 (Wash. Ct. App. 2000); *U.S.F. & G. Ins. Co. v. Brannan*, 589 P.2d 817, 822–23 (Wash. Ct. App. 1979).

1  "occurrence"). Conversely, acts of negligence arising after the excluded event are not necessarily

2  precluded by the underlying event's exclusion. *Am. Best Food, Inc. v. Alea London, Ltd.*, 229

3  P.3d 693, 696–99 (Wash. 2010); *accord Capitol Specialty Ins. Corp. v. JBC Entm't Holdings,*

4  *Inc.*, 289 P.3d 735, 737–39 (Wash. Ct. App. 2012).

As discussed above, IDS is not entitled to judgment on the pleadings as to the estates' negligence claims against the Ivanovs, as material disputes of fact remain unresolved as to whether their alleged negligence is a covered "occurrence" under the policies. *See supra* Section II.D.i. But because Allen Ivanov's actions are excluded under the intentional act exclusionary provision in the Mukilteo policy, the Ivanovs cannot avail themselves of coverage under that policy for the estates' negligence claims predicated on the excluded act. *See Alea London, Ltd.*, 229 P.3d at 696–99; *Capitol Specialty Ins. Corp.*, 289 P.3d at 737–39. Therefore, IDS's motion for judgment on the pleadings is GRANTED as to the Mukilteo's exclusion of coverage for the estates' claims of negligence against the Ivanovs.[4]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IDS's request for judicial notice (Dkt. No. 31) as to the existence of the affidavit of probable cause and the estates' state court complaints, but DENIES IDS's request as to the facts contained therein. The Court GRANTS judicial notice as to both the existence of and facts contained within Allen Ivanov's guilty plea and the state court judge's amended report.

The Court further GRANTS IDS's motion for judgment on the pleadings (Dkt. No. 29) on the issues of: (1) Allen Ivanov being an insured person under the Mukilteo policy at the time of the shooting; (2) the Mukilteo policy's intentional act exclusion barring coverage for Allen Ivanov's intentional shooting of Bui and Long; and (3) coverage being barred under the Mukilteo

---

[4] Coverage for the estates' negligence claims against the Ivanovs are unaffected as to the Lynnwood and Everett policies, as IDS has not established that Allen Ivanov was an insured under those policies and thus their exclusionary provisions do not apply to his intentional acts. *See supra* Section II.C.ii.

policy as to the estates' claims of negligence against the Ivanovs. IDS's motion for judgment on the pleadings is otherwise DENIED as to coverage being barred under the Lynnwood and Everett policies for the estates' claims of negligence against the Ivanovs.

DATED this 27th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE